UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

M.D. BONNIE J. LEES,

                              Plaintiff,        No. CV 04-1804-MO

v.                                                    ORDER

ASANTE HEALTH SYSTEMS, et al.,

                              Defendants.

**MOSMAN, J.,**

       Before the court are defendants' motions for summary judgment. Defendants argue they are immune from liability on all counts of plaintiff's complaint under the Federal Health Care Quality Improvement Act ("HCQIA") (42 U.S.C. §§ 11101-11152). At the oral argument on October 14, 2005, the court reserved judgment as to whether the defendants' conduct on April 7, 2003, and February 16, 2004, constituted "actions" subject to the due process requirements of 42 U.S.C. § 11112(a). For the reasons set forth below, the court finds that the April 7, 2003, Notice of Adverse Action constitutes an "action" for which defendants are not entitled to immunity because it was not taken after a reasonable effort to obtain the facts of the matter.

I.      <u>Summary Judgment Standard</u>

       Section 11112(a) of the HCQIA creates a rebuttable presumption that the professional review action in question meets the requirements necessary for § 11111(a) immunity. 42 U.S.C. § 11112(a). Thus, the statute modifies and creates a somewhat unusual standard for summary judgment: "Might a reasonable jury, viewing the facts in the best light for [the plaintiff], conclude that he has shown, by a preponderance of the evidence, that the defendants' actions are

outside the scope of § 11112(a)?" *Austin v. McNamara*, 979 F.2d 728, 734 (9th Cir. 1992).

II.     HCQIA Immunity

Under the HCQIA, a peer review participant is immune from private damages claims associated with the peer review action, provided that the review action is taken:

> (1) in the reasonable belief that the action was in the furtherance of quality health care,
>
> (2) after a reasonable effort to obtain the facts of the matter,
>
> (3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and
>
> (4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirements of paragraph (3).

42 U.S.C. § 11112(a). The court held that plaintiff did not show, by a preponderance of the evidence, that defendants' actions are outside the scope of prongs (1), (3) or (4). In other words, Asante Health Systems ("Asante") did act in the reasonable belief that the action was in furtherance of quality health care and adequate notice and hearing procedures were afforded to plaintiff. In particular, the court found that it was reasonable for the hospital Board to be concerned with a physician's disruptive behavior, and this could even be the sole reason for believing an action furthered quality health care.

The court reserved judgment on prong (2), *action* taken "after a reasonable effort to obtain the facts." Resolving this issue turns on how "action" is defined, and in this case, whether

there are "actions" other than the August 27, 2003, Notice of Adverse Action that are subject to the requirement of being taken "after a reasonable effort to obtain the facts." Complicating the analysis is the fact that plaintiff's hospital privileges automatically lapsed on June 30, 2002, during the process leading up to the ultimate denial of her hospital privileges.

A "professional review *action*" is defined broadly as:

> an action or recommendation of a professional review body which is taken or made in the conduct of professional review activity, which is based on the competence or professional conduct of an individual physician (which conduct affects or could affect adversely the health or welfare of a patient or patients), and which affects (or may affect) adversely the clinical privileges, or membership in a professional society, of the physician. Such term includes . . . professional review activities relating to a professional review action.

42 U.S.C. § 11151(9). In contrast, a "professional review *activity*" is defined as:

> an activity of a health care entity concerning a particular physician
>
> (A) to determine whether the physician may have clinical privileges with respect to, or membership in, the entity,
>
> (B) to determine the scope or conditions of such privileges or membership, or
>
> (C) to change or modify such privileges or membership.

42 U.S.C. § 11151(10).

The April 7, 2003, Notice of Adverse Action is an "action" as that term is defined by the HCQIA. The Notice informs plaintiff that the Board revoked her medical privileges and reappointment to the medical staff at Rogue Valley Medical Center ("RVMC"). This constitutes "an action or recommendation of a professional review body . . . which is based on the competence or professional conduct of an individual physician" which affected or may have

affected adversely plaintiff's clinical privileges. Nothing in the statutory language or in the caselaw suggests that events subsequent to April 7, 2003, such as the Fair Hearing Committee ("FHC") process, operate to make this Notice of Adverse Action something other than an "action." This does not mean that an event can never be taken out of being classified as an "action" by subsequent events. An "action," for example, that is automatically stayed or nullified by an appeals process, might not retain its status as an action pending appeal. *See, e.g., Gabaldoni v. Wash. County Hosp. Assoc.,* 250 F.3d 255, 262-263 (4th Cir. 2001) (Board did not take "action" until it voted on physician's privileges after reviewing the Hearing Committee findings regarding the Board's initial vote to terminate physician's privileges). But nothing like that happened here.

Additionally, the fact that plaintiff's privileges had already lapsed by April 7, 2003, does not somehow remove it from the category of "action." This April 7, 2003, Notice of Adverse Action, independent of the preceding lapse, "affect[ed] (or may affect) adversely [plaintiff's] clinical privileges" and her ability to practice medicine at RVMC. As such, it satisfies the statutory definition of "action."

Having concluded that the April 7, 2003, Notice of Adverse Action constitutes an "action," the court must next analyze the defendants' entitlement to HCQIA immunity by examining defendants' compliance with the four due process elements enumerated by 42 U.S.C. § 11112(a). On the first prong, defendants took this action based primarily on plaintiff's disruptive behavior and this satisfies the requirement that the action be taken in the reasonable belief that it is in furtherance of quality health care. On the second prong, viewing the facts in the light most favorable to the plaintiff, a reasonable jury might conclude that she has shown by

a preponderance of the evidence that defendants did not take this action after a "reasonable effort to obtain the facts." Significantly, the FHC report from August 2003 rejected the Board's April decision on the grounds that the evidence considered by the Board was too one-sided. The FHC found that "the evidence presented by the administration to the MEC and the Asante Board in the deliberations prior to the filing of the adverse action failed to equally recognize the considerable body of support for Dr. Lees." Def.'s Mot. Summ. J., Ex. 36 at 4.

The court's own analysis is in agreement with the conclusions of the FHC. Defendants issued the April 7, 2003, Notice of Adverse Action without having undertaken a reasonable effort to obtain the facts. Thus, defendants are not entitled to HCQIA immunity from damages insofar as the April 7, 2003, "action" is concerned. Accordingly, the court denies defendants' motion for summary judgment regarding the April 7, 2003, action.

Finally, the court must decide whether the Board's February 16, 2004, rejection of plaintiff's application for privileges is a "professional review action." This wholesale rejection of privileges occurred shortly after the Appellate Review Committee recommended that the Board affirm it's August 27, 2003, eight tenet conditional reappointment. As such, this seems to be part of the same overall decision to limit plaintiff's privileges, but is largely different in the degree to which they were limited – 8 tenet conditional versus complete denial. Because of its impact on her privileges, the Board's February 16, 2004, revocation best classified as a "professional review action." The court finds, however, that defendants satisfied the HCQIA due process requirements and thus are entitled to immunity. Given that the February 2004 decision took place after the FHC hearing, this decision meets the first and second prongs of HCQIA immunity as it was made in furtherance of quality health care and after a reasonable effort to obtain the

facts. As to the third prong requiring adequate notice and hearing, although the February 2004 decision, taken in isolation, was abrupt, plaintiff has failed to meet the heightened standard to survive summary judgment by overcoming the presumption that Asante met the requirements of HCQIA immunity. Plaintiff was afforded a Fair Hearing, and an Appellate Review Committee heard her appeal. The fact that the Board's ultimate rejection of her application for privileges was a more extreme action than recommended by the Appellate Review Committee does not render it unfair under the circumstances. Therefore, the court grants defendants' motion for summary judgment regarding the February 16, 2004, denial of privileges.

Because the court already determined that the defendants are entitled to HCQIA immunity as to the August 27, 2003, action, the court grants defendants' motion for summary judgment as to that action. The court denies defendants' motion for summary judgment regarding the April 7, 2003, Notice of Adverse Action. Defendants' motions for summary judgment (#21 and #27) are GRANTED in part and DENIED in part.

IT IS SO ORDERED.

DATED this ___22nd___ day of November, 2005.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge